UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────

GEORGE H. ROBERTS, II, et al.,

                Plaintiffs,

v.                                     **DECISION AND ORDER**
                                                    02-CV-746S

WAYNE LAPP, et al.,

                Defendants.
───────────────────────────────

    1.    On October 22, 2002, Plaintiffs commenced this action by filing a Complaint in the United States District Court for the Western District of New York.  In their Complaint, Plaintiff George H. Roberts, II, and his infant children, George A. Roberts and Katherine Roberts, allege that Defendants violated their rights under the Fourth, Fifth and Fourteenth Amendments.  Plaintiffs seek relief pursuant to 42 U.S.C. § 1983, and various supplemental state laws.[1]

    2.    The relevant facts as set forth in the Complaint are as follows.  On or before October 6, 1999, Defendant Parole Officer Lapp distributed a "Be-On-The-Lookout" flyer ("BOLO flyer") to the Buffalo Police Department, directing Officers to arrest Plaintiff if he was observed operating a motor vehicle in violation of his parole conditions.  Compl., ¶¶ 7, 14.  Acting on the BOLO flyer, Defendant Police Officers Greenway and Molenda detained Plaintiff as he exited a NOCO Store on October 6, 1999, and began to interrogate him.  Compl., ¶ 15.  When Plaintiff "attempted to go on his way," the Defendant Police Officers arrested, booked and jailed Plaintiff on charges of driving without a license and

───────────────────────────────

    [1]    The infant Plaintiffs' claims in this matter are derivative.  For the purposes of this Motion, any reference to "Plaintiff," in the singular, relates to George H. Roberts, II.

obstructing governmental administration.  Compl., ¶ 15.  In addition, Defendant Lapp charged Plaintiff with various violations of his parole conditions, issued a parole detainee warrant, thereby precluding Plaintiff's eligibility for release on the underlying Buffalo City Court matter, and revoked his parole status.  Compl., ¶ 17.  On January 10, 2000, Buffalo City Court Judge Robert T. Russell, Jr. dismissed all criminal charges against Plaintiff.  Compl., ¶ 16.  Nonetheless, because Defendant Lapp had revoked Plaintiff's parole status, he continued to be detained.  Compl., ¶ 17.  On April 20, 2000, New York State Supreme Court Justice Thomas P. Flaherty granted Plaintiff's writ of habeas corpus and ordered his immediate release from the custody of the New York State Division of Parole.  Compl., ¶ 20.  This action ensued.

   3. On April 19, 2004, Defendant Lapp filed a Motion to Dismiss the Complaint pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Thereafter, on June 8, 2004, Defendants Greenway and Molenda filed a Motion to Dismiss the Complaint pursuant to Rule 12(b)(6), or for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  In a Decision and Order entered on March 10, 2005,[2] this Court dismissed the state law claims against Defendants Greenway and Molenda as untimely, but declined to dismiss the federal claims on that basis.  With respect to Defendant Lapp, this Court concluded that the Eleventh Amendment acted as a complete bar to Plaintiffs' federal claims, and that New York Executive Law § 259-q precluded any state law claims against him in his personal capacity for acts and omissions

---

[2] Familiarity with this Decision is presumed.

which were within the scope of his employment. Accordingly, Defendant Lapp was terminated as a Defendant in this case.

4. On April 21, 2005, Plaintiffs filed a Motion for Reconsideration of this Court's March 10, 2005 decision to the extent that it dismissed Plaintiffs' federal claim against Defendant Lapp in his personal capacity. In particular, Plaintiffs argue that they sufficiently pled personal capacity claims against Defendant Lapp, such that outright dismissal was inappropriate. For the following reasons, Plaintiff's Motion for Reconsideration is granted.

5. The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration. Traditionally, courts treat such motions under the scope of Rule 59(e), which provides for alteration or amendment of a judgment as long as such motion is filed no later than ten days from the entry of the judgment.[3] See, e.g., Cray v. Nationwide Mut. Ins. Co., 192 F. Supp. 2d 37, 38 n.1 (W.D.N.Y. 2001). Generally, Rule 59(e) permits reconsideration of a prior decision when there has been an intervening change in the law, new evidence becomes available, or there is a need to correct a clear error or prevent manifest injustice. See Patterson-Stevens, Inc. v. International Union of Operating Eng'rs, 164 F.R.D. 4, 6 (W.D.N.Y. 1995); Cray, 192 F. Supp. 2d at 39 (collecting cases). Motions for reconsideration are not to be used as a means to reargue matters already disposed of by prior rulings or to put forward additional arguments that could have been raised prior to the decision. Duane v. Spaulding & Rogers Mfg. Inc., No. 92-CV-305, 1994 WL 494651, *1 (N.D.N.Y. Aug. 10, 1994). It is well settled that the decision to grant a Rule

---

[3] In the instant case, Plaintiffs were granted an extension of time in which to file a motion for reconsideration.

59(e) motion is within the sound discretion of the court.  See McCarthy v. Manson, 714 F.2d 234, 237 (2d Cir. 1983); see also New York v. Holiday Inns, Inc., No. 83-CV-564S, 1993 WL 30933, at *4 (W.D.N.Y. 1993) (Skretny, J.).

  6. In the instant matter, Plaintiffs apparently concede that New York Executive Law § 259-q precludes their state claims against Defendant Lapp in his personal capacity for his alleged acts and omissions, which this Court found were within the scope of his employment.  See N.Y. EXEC. LAW § 259-q.  Moreover, Plaintiffs do not dispute the Eleventh Amendment bars their federal claims against Defendant Lapp in his official capacity.  Nonetheless, Plaintiffs argue that they sufficiently pled personal capacity claims against Defendant Lapp under 42 U.S.C. § 1983 to survive a motion to dismiss.  For the following reasons, this Court agrees.

  7. The Supreme Court distinguished official and personal capacity suits in the case of Kentucky v. Graham, 473 U.S. 159, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985). Therein, the Court stated that "[p]ersonal-capacity suits seek to impose personal liability upon a governmental official for actions he takes under color of state law." Id. at 165.  In contrast, the Graham Court explained, "[o]fficial-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" Id. (quoting Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690 n. 55, 98 S. Ct. 2018, 2036, 56 L. Ed. 2d 611 (1987)).

  To establish personal liability under 42 U.S.C. § 1983, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." Graham, 473 U.S. at 166.  A plaintiff asserting a claim under 42 U.S.C. § 1983 may only recover

punitive damages when he or she sues an official in his or her personal capacity.  Id.

Even when a complaint is silent or ambiguous as to whether individual defendants are sued in their official or individual capacities, the Second Circuit has held that outright dismissal at the pleading stage is generally not warranted.  Ying Jing Gan v. City of New York, 996 F.2d 522, 530 (2d Cir. 1993).  Under such circumstances, a court must "look to the totality of the complaint as well as the course of the proceedings to determine whether the defendants were provided with sufficient notice of potential exposure to personal liability."  Yorktown Med. Laboratory, Inc. v. Perales, 948 F.2d 84, 89 (2d Cir. 1991).  Oftentimes, "only the course of the proceedings . . . will indicate the nature of the liability to be imposed."  Ying Jing Gan, 996 F.2d at 530 (internal quotations and citations omitted).

The Second Circuit has held that a plaintiff's request for punitive and compensatory damages provides sufficient notice to a defendant that he or she is being sued in his or her personal capacity.  See Pinaud v. County of Suffolk, 52 F.3d 1139, 1147 (2d Cir. 1995); see also Shabazz v. Coughlin, 852 F.2d 697, 700 (2d Cir. 1988).  Further, the Second Circuit has recognized that by raising a defense of qualified immunity in response to a plaintiff's complaint, a defendant acknowledges that he or she has been sued in his or her personal capacity.  Yorktown Med. Laboratory, Inc., 948 F.2d at 89.  As such, it is not unusual for a defendant to suggest that a plaintiff's complaint states only official-capacity claims by declining to raise absolute or qualified immunity defenses.  See Davis v. County of Nassau, 355 F. Supp. 2d 668, 675 (E.D.N.Y. 2005).

8.     With few exceptions, the Eleventh Amendment "bars federal courts from entertaining suits brought by a private party against a state in its own name."  Ying Jing

5

Gan, 996 F.2d at 530 (citing Edelman v. Jordan, 415 U.S. 651, 662-63, 94 S. Ct. 1347, 1355, 39 L. Ed. 2d 66 (1974)). "To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke Eleventh Amendment immunity belonging to the state." Ying Jing Gan, 996 F.2d at 529 (citing Graham, 473 U.S. at 166-67). When a claim is brought against an official in his individual capacity, he or she is not entitled to immunity under the Eleventh Amendment. Ying Jing Gan, 996 F.2d at 529. Nonetheless, when sued in his or her individual capacity, the state official may be entitled to absolute or qualified immunity, depending in part on the nature of the function performed. Id. These particular defenses do not belong to the governmental entity, rather, they are the official's personal privileges for his official acts. Id. (citing Owen v. City of Independence, 445 U.S. 622, 638, 100 S. Ct. 1398, 1409, 63 L. Ed. 673 (1980)). As the Second Circuit summarized in Ying Jing Gan:

> the capacities in which a state official is sued for damages under [42 U.S.C. § 1983] establish parallel lines of privileges. To the extent that such a claim is asserted against the state official in his official capacity, he may assert the state's Eleventh Amendment immunity against suit, but he may not assert a personal official privilege of absolute or qualified immunity. To the extent that such a claim is asserted against him in his individual capacity, he may assert privileges of absolute or qualified immunity but may not assert immunity under the Eleventh Amendment.

Ying Jing Gan, 996 F.2d at 529.

9.Generally, a parole officer is entitled to absolute immunity when he or she performs judicial functions, such as deciding whether to grant, deny or revoke parole. Scotto v. Alemas, 143 F.3d 105, 111 (2d Cir. 1998) (collecting cases). Moreover, "parole

6

officers also receive absolute immunity for their actions in initiating parole revocation proceedings and in presenting the case for revocation to hearing officers, because such acts are prosecutorial in nature." <u>Scotto</u>, 143 F.3d at 112. However, "[t]he more distant a function is from the judicial process, the less likely absolute immunity will attach." <u>Scotto</u>, 143 F.3d at 111 (citing <u>Snell v. Tunnell</u>, 920 F. 2d 673, 687 (10th Cir. 1990)). Likewise, where a parole officer's conduct is not sufficiently analogous to the role of a prosecutor in initiating criminal proceedings, it will not warrant absolute immunity. See <u>Ray v. Pickett</u>, 734 F.2d 370, 372-73 (8th Cir. 1984); <u>see</u> also <u>Wilson v. Kelkhoff</u>, 86 F.3d 1438, 1445-46 (7th Cir. 1996); <u>see</u> also <u>Smiley v. Davis</u>, No. 87 CIV. 6047(MGC), 1988 WL 78306, at *3-*4 (S.D.N.Y. July 14, 1988). In such cases, the defendant parole officer may nonetheless be entitled to qualified immunity for his actions. <u>Scotto</u>, 143 F.3d at 113.

10. In the instant case, Plaintiffs' Complaint identifies Defendant Lapp as a Parole Officer with the New York State Division of Parole, and indicates that at all times relevant Defendant Lapp was acting under the authority of the New York State Division of Parole as Plaintiff's supervising officer. Moreover, the Complaint alleges conduct on the part of Defendant Lapp, which clearly falls within the scope of his employment. Nonetheless, Plaintiffs Complaint does seek punitive damages and does indicate that individual named Defendants, including Defendant Lapp, are sued in their personal and individual capacities. In his Motion to Dismiss, Defendant Lapp argued that the Complaint asserts claims against him in his official capacity under 42 U.S.C. § 1983, and that any such claims are barred by the Eleventh Amendment. Defendant Lapp did not, however, raise the defenses of absolute or qualified immunity. As such, this Court did not address

7

the availability of these defenses in its prior decision, and declines to resolve this issue upon the instant motion for reconsideration.

Acknowledging without finding that Defendant Lapp may ultimately be entitled to absolute or qualified immunity for his alleged conduct, this Court finds that it was premature to dismiss Plaintiffs' claims against this Defendant in their entirety.  Plaintiffs' Complaint does set forth claims against Defendant Lapp in his personal capacity, which are not precluded by the Eleventh Amendment.  Because Defendant Lapp failed to raise the appropriate defenses to these claims, this Court is constrained to grant Plaintiffs' motion for reconsideration.  Accordingly, Defendant Lapp will be reinstated as a party to this action and Plaintiffs' personal-capacity claims against Defendant Lapp will be restored.

IT HEREBY IS ORDERED, that Plaintiffs' Motion for Reconsideration (Docket No. 38) is GRANTED.

FURTHER, that the Clerk of the Court is directed to reinstate Defendant Wayne Lapp as a Defendant in this case.

FURTHER, Plaintiffs' claims under 42 U.S.C. § 1983 are hereby restored as against Defendant Lapp in his personal capacity.

SO ORDERED.

Dated:   July 26, 2005
         Buffalo, New York

                                          /s/William M. Skretny
                                          WILLIAM M. SKRETNY
                                          United States District Judge